UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:21-cr-270-KKM-TGW

HAO KUO CHI

### UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits its sentencing memorandum. As further explained below, and pursuant to 18 U.S.C. § 3553(a), the United States respectfully submits that a guideline-sentence is appropriate in this case.

**I.  Procedural History**

On August 11, 2021, the Government filed a four-count Information in the Middle District of Florida, Tampa Division, charging the defendant, Hao Kuo Chi, with conspiring to gain unauthorized access to a protected computer, in violation of 18 U.S.C. §§ 371, 1030(a)(2)(C) and (c)(2)(B)(ii), and three substantive counts of unauthorized access to a protected computer, in violation of 18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(B)(ii), and 2. Doc. 1. On October 15, 2021, Chi pleaded guilty to all counts of the Information pursuant to a written plea agreement. Docs. 4, 14. The Court has scheduled sentencing to take place on June 15, 2022. Doc. 27.

## II. Presentence Investigation Report

On June 1, 2022, the U.S. Probation Office issued its final Presentence Investigation Report ("PSR"). Doc. 29. It determined Chi's applicable guideline-range for the underlying offenses as 87-108 months' imprisonment, based on an adjusted total-offense level of 29 and a criminal history category of I. *Id.* at ¶ 74.

The parties have no remaining factual objections to the PSR. The United States has no remaining legal objections to the PSR. Chi maintains one legal objection to paragraph 34 of the PSR, which, relying on USSG § 2B1.1(b)(1)(I), increases his offense level by 16 levels. Specifically, Chi objects to the use of the $500 per access device directive in USSG §2B1.1, comment note 3(F)(i), to determine loss in the §2B1.1(b)(1) guideline. For the reasons that follow, this Court should overrule Chi's objections and adopt the remainder of PSR's facts and guideline-calculation.

### A. Objection

Section § 2B1.1(b) requires the Court to determine "loss." And in this case, the Sentencing Guidelines require the use of a formula that the Sentencing Commission has established for access device-related offenses; USSG. § 2B1.1, Application Note 3(F)(i). Chi argues that the Court should disregard the Sentencing Commission's directive to use this formula, citing *United States v. Riccardi*, 989 F.3d 476 (6th Cir. 2021). In *Riccardi*, the defendant stole 1,322 gift cards with "total face values of $47,000." *Id.* at 486. The Sixth Circuit did not address the defendant's intended loss (or gain) when she stole the cards, but rather focused on the lack of "evidence suggesting that the total 'damage' from this theft approached the $752,500." *Id.* The

2

Sixth Circuit concluded that the access device formula constituted a substantive rule which had not been properly adopted as such. *Id*. at 483. In order to reach that result, the *Riccardi* court disregarded decades of precedent that made clear that loss estimates and formulae, such as that adopted in Application Note 3(F)(i) of § 2B1.1, are appropriate tools for estimating loss.

Because of the unique difficulty in determining loss in the context of access device theft and fraud cases, an efficient way to ensure uniformity in the application of § 2B1.1 is to adopt a framework for making the required loss estimate; which is precisely what the Sentencing Commission has done. The actual or intended loss is unusually difficult to identify in access device cases for a number of reasons: the offenses frequently involve the theft of large volumes of access devices; the offenses typically do not involve an explicit demand for a particular amount of money; and the offenses typically involve an intent to steal as much money as possible, without knowing the available amount.

The Sentencing Guidelines have recognized these challenges since the beginning. The original guidelines directed courts to apply a minimum $100 loss for stolen credit cards. *See* USSG 2B1.1 (1987), Application Note 4 ("The loss includes any unauthorized charges made with stolen credit cards, but in no event less than $100 per card."). For most cases, the amount was increased from $100 to $500 after the Sentencing Commission conducted further research—which was required by Section 4 of the Identity Theft and Assumption Deterrence Act of 1998, Pub. L. 105–318(b)(1)—that directed it to ensure that the Sentencing Guidelines provided

3

appropriate penalties for identity theft crimes (e.g., identity theft crimes involving credit cards). The Sentencing Commission's research at that time indicated that, with the exception of certain telecommunications access devices, the $100 loss estimate was insufficient. *See* USSG, Appendix C, Amendment 596 (2000).

After more than a decade of decisions in dozens of cases in the Eleventh Circuit, it is settled that the term "loss," as used in the Sentencing Guidelines, includes actual loss, intended loss, and estimated loss. *See e.g.*, *United States v. Maitre*, 898 F.3d 1151 (11th Cir. 2018); *United States v. Nelson*, 724 Fed. Appx. 814, 819 (11th Cir. 2018) (unpublished); *United States v. Wright*, 862 F.3d at 1275 (11th Cir. 2017); *United States v. Torres-Bonilla*, 556 Fed. Appx. 875, 882 (11th Cir. 2014) (unpublished); *United States v. Acevedo*, 860 Fed. Appx. 604, 612 (11th Cir. 2021) (unpublished). When the Sentencing Commission adopted its commentary in 2001, including Application Note 3(F)(i), it was not only permitted, but was in fact required, to interpret the term "loss." And as the law stands, that term in the sentencing context plainly embraces intended, actual, and estimated loss. Accordingly, Application Note 3(F)(i) is a permissible, appropriate, and reasonable interpretation of § 2B.1.

### III.    Argument in Support of a Guideline Sentence

The Supreme Court has declared, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 41 (2007). Although this Court may not presume that a guideline-range sentence is reasonable, the Sentencing

4

Guidelines remain a significant and pivotal component of the sentencing process. *United States v. Delva*, 922 F.3d 1228, 1257 (11th Cir. 2019); *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) ("[W]hile we do not presume that a sentence falling within the guidelines range is reasonable, we ordinarily expect it to be so."). This Court, therefore, "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891–92 (2009).

Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in section 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. Chi's conduct, considered in conjunction with the sentencing factors set forth in 18 U.S.C. § 3553(a), calls for a guideline-sentence.

    A.    **Nature and Circumstances of Offense**

Revenge porn refers to explicit and intimate images of others shared without consent and with the intent to intimidate, harass, or embarrass. For years, a website named Anon-IB served as ground zero for such conduct. The website organized the

images by location (e.g., country or state) and subject (e.g., university or military branch), which users could upload, download, trade, and comment on. A substantial portion of the users swapped nude photographs and videos of young women on the website, which they referred to as "wins." On or about April 25, 2018, the Dutch National Police shut down Anon-IB and seized its servers. From the servers, law enforcement confiscated images depicting hundreds of nude women, including teenagers. According to the Dutch police, some of the images were shared by ex-boyfriends and husbands, while others were obtained by breaking into the victims' email, social media, and cloud storage accounts.

For years, Chi hacked into the Apple iCloud accounts of victims across the country—primarily young women—in search of "wins." Doc. 29, ¶¶ 12-14. Using the moniker "icloudripper4you," he then shared and traded these images with persons he had met on Anon-IB. *Id*. Chi's email accounts contained the email addresses and passwords (i.e., the credentials necessary to hack an iCloud account) of approximately 4,700 victims. *Id*. at ¶ 22. His email accounts also revealed that he had sent content stolen from victims to conspirators on more than 300 occasions. *Id*. Perhaps even more troubling, Chi did not receive any monetary compensation whatsoever for engaging in this violative course of conduct. *Id*. at ¶ 23.

Unsurprisingly, some of the images stolen by Chi found their way into public sphere. *Id*. at ¶ 23. For example, private images of K.N. in the nude and performing sex acts wound up on multiple websites. *Id*. at ¶ 20. These images, originally stolen by Chi, were (and still are) accessible to anyone with an internet connection. K.N.

explained that this experience irrevocably changed her life; affecting her physical health, her perception of her personal safety, and causing the loss of her job. *Id.* at ¶ 27; *see also* K.N.'s victim impact statement. But Chi not only shared his "wins," he also kept many of those images for his own personal collection. Chi maintained approximately 3.5 terabytes of victim data on cloud and physical storage, containing content attributable to more than 500 unique victims. *Id.* at ¶ 23. It is probable that unlike K.N., many of these victims are unaware that their explicit and intimate images are in the hands of strangers.

B. **History and Characteristics of Defendant**

The PSR does not reveal anything remarkable about Chi's childhood or life that could explain his offense conduct. He was raised in a two-parent home. Doc. 29, ¶¶ 58-59. He is a high school graduate who has taken some college courses. *Id.* at ¶ 69. He has been employed by the same company for 15 years, and married for more than a decade. *Id.* at ¶ 62, 71. Chi reported suffering from anxiety and depression from a young age, but has no history of substance abuse. *Id.* at ¶¶ 67-68. By all appearances, Chi is a successful and well-adjusted adult. In other words, Chi's history and characteristics weigh in favor of guideline-sentence, and does not support a downward departure or variance.

In March 2007, law enforcement charged Chi with "Invade Privacy with Concealed Camcorder/Etc," "Annoy/Etc. Child-18," and "Disorderly Conduct."[1]

---

[1] The United States has been unable to locate any additional information regarding this case.

7

*Id.* at ¶ 50. Those charges stemmed from Chi's alleged surreptitious recording of a 22-year-old woman showering; which was done on service call while he was employed for Best Buy's "Geek Squad." This prior arrest. taken in conjunction with the instant offense conduct establishes a pattern of victimizing unsuspecting young women, and further weighs in favor of guideline-sentence and against a downward departure or variance.

      **C.**    **Seriousness of the Offense and Respect for the Law**

      This is a serious crime, and a comparable sentence is necessary to promote respect for the law. Revenge porn and online platforms that facilitate the sharing of such content, like Anon-IB, are unfortunately becoming more commonplace. Chi's involvement in the offense conduct was prolonged (lasting more than two years), widespread (affecting hundreds of women all over the United States), and had no apparent purpose other than to satisfy the sexual appetites of himself and others. Chi's actions displayed a gross indifference toward the many women he victimized, and it's ramifications, much of which is still known, deeply affected the victims' personal and professional lives. This Court's sentence must express an appropriate level of condemnation of his crimes, and a guideline-sentence would do just that.

## IV. Conclusion

This Court should sentence Chi to a guideline-sentence of 87-108 months' imprisonment. This sentence is reasonable because it reflects the seriousness of Chi's crimes and promotes respect for the law.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: */s/ Carlton C. Gammons*
Carlton C. Gammons
Assistant United States Attorney
Florida Bar Number 85903
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Carlton.Gammons@usdoj.gov

U.S. v. Hao Kuo Chi                              Case No. 8:21-cr-270-KKM-TGW

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

                                              */s/ Carlton C. Gammons*
                                              Carlton C. Gammons
                                              Assistant United States Attorney
                                              Florida Bar Number 85903
                                              400 N. Tampa Street, Suite 3200
                                              Tampa, Florida 33602-4798
                                              Telephone:   (813) 274-6000
                                              Facsimile:     (813) 274-6358
                                              E-mail: Carlton.Gammons@usdoj.gov